United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 02, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 22-33881 |
| ISMAEL DOMINGUEZ, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 13 |

## MEMORANDUM OPINION

Ismael Dominguez purchased his home utilizing a wraparound deed of trust. The underlying deed of trust contained a due on sale clause that prohibited the sale of the home without the lender's advance consent. Dominguez's proposed plan fails to cure his admitted violation of the due on sale clause. Because a cure of the default is required under § 1322(b)(5) of the Bankruptcy Code, confirmation of the proposed modified plan is denied.

## BACKGROUND

### I. FACTUAL BACKGROUND

Hermann Krohn is the owner and holder of a note secured by a deed of trust on property located at 5414 Lyndhurst Dr., Houston, Texas 77033. ECF No. 78-1 (real estate lien note); ECF No. 78-2 (deed of trust). That property is now Dominguez's principal residence. ECF No. 74 at 10 (identifying the property as Debtor's exempt homestead on Debtor's Schedule C). Krohn provided CCS1 a purchase money loan on September 6, 2017, in exchange for a note secured by a deed of trust covering the property. ECF No. 78-2 at 2. The borrower under the note and deed of trust is CCS1, LLC. ECF No. 78-1 at 1; ECF No. 78-2 at 2.

The deed of trust contained a due on sale clause, stating "If Grantor transfers any part of the property without Beneficiary's prior written consent, Beneficiary may declare the debt secured by this deed of trust immediately payable."  ECF No. 78-2 at 5.

On June 6, 2018, CCS1 sold the property to Dominguez and his spouse.  ECF No. 83 at 3.  CCS1 provided Dominguez purchase money financing in exchange for a promissory note secured by a wraparound deed of trust covering the property.  ECF No. 79-4 (promissory note); ECF No. 79-2 (wraparound deed of trust).  The wraparound deed of trust states "This conveyance is additionally made and accepted subject to a Deed of Trust from CCS1 LLC to L Steve Bray, Trustee for the benefit of Hermann Krohn, securing a note in the original principal sum of $67,500.00, dated September 6, 2017, filed September 28, 2017, recorded in File Number RP-2017-427947, Real Property Records, Harris County, Texas."  ECF No. 79-2 at 8.

The wrap transaction disclosure and hold harmless agreement alerts Dominguez to the fact that "[t]he existing lien holder was not contacted at the requet [sic] of the parties to this transaction; [t]he failure to obtain the consent of the lender may constitute a default under the existing lien(s) instrument[.]"  ECF No. 78-5 at 9.

## II.  PROCEDURAL BACKGROUND

Dominguez filed a chapter 13 bankruptcy petition on December 30, 2022.  ECF No. 1.  The plan was confirmed on June 9, 2023.  ECF No. 63.  Dominguez filed a uniform modification of the confirmed plan on June 22, 2023, "to provide for the superior mortgage lien to Hermann Krohn."  ECF No. 71.  Krohn objected on August 1, 2023, ECF No. 81, and filed an amended objection on August 31, 2023.  ECF No. 83.  Dominguez filed an amended uniform modification of the plan on September 11, 2023.  ECF No. 87.

The Court heard oral argument on September 19, 2023.  ECF No. 94.  At the hearing, the Court directed the parties to begin settlement

discussions to amicably resolve the current dispute.  *Id.*  The parties were unable to come to a settlement and have requested the Court to enter a ruling on the amended uniform modification of the confirmed plan.  ECF No. 95.  The Court denies confirmation of Dominguez's modified plan.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

The Bankruptcy Code addresses the curing of defaults for a claim secured only by a security interest in the debtor's principal residence in §§ 1322(b)(2) and (b)(5).

> (b) Subject to subsections (a) and (c) of this section, the plan may—
> . . .
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
> . . .
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . .

11 U.S.C. § 1322(b). The Court must evaluate the meanings of the terms "rights" and "cure" as they are used in §1322(b).

## I.    DEFINING "RIGHTS" UNDER § 1322(b)(2)

The Bankruptcy Code does not allow a plan to modify the rights of the holder of a claim secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). The "rights" referred to in § 1322(b)(2) have been defined by the Supreme Court as those "reflected in the relevant mortgage instruments, which are enforceable under Texas law." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 324 (1993) (where Texas law was the state law controlling the mortgage on the principal residence).

The relevant mortgage instrument "right" in dispute is the due on sale clause. The right provided by a due on sale clause is the "mortgagee's future right to deal only with the original mortgagor as owner of its collateral, and to consent to a transfer only if the mortgage payments are current and the proposed transferee otherwise meets with the mortgagee's approval." *In re Allen*, 300 B.R. 105, 118 (Bankr. D.D.C. 2003). "Due on sale clauses are valid and enforceable in Texas." *In re Mullin*, 433 B.R. 1, 9–10 (Bankr. S.D. Tex. 2010) (citing *Sonny Arnold v. Sentry Savings Assoc.*, 633 S.W.2d 811 (Tex.1982)).

Applying this understanding to the statute, § 1322(b)(2) prohibits a plan from modifying the right of a home lender reflected in a due on sale clause. "That right is destroyed if the court allows the debtor's plan to force a new owner on the mortgagee in continued violation of the due-on-transfer clause." *Allen*, 300 B.R. at 118.

## II.   CURING DEFAULT OF DUE ON SALE CLAUSE UNDER § 1322(b)(5)

The Bankruptcy Code provides an exception to § 1322(b)(2)'s prohibition on modifying a home lender's rights. Section 1322(b)(5) provides that, notwithstanding § 1322(b)(2), a plan may "provide for the curing of any default within a reasonable time . . . ." 11 U.S.C. § 1322(b)(5). Curing a default refers to restoration of the way things

were before the default.  *Mullin*, 433 B.R. at 13 (citing *In re Clark*, 738 F.2d 869, 872 (7th Cir. 1984).

In the context of the default of a due on sale clause, "[t]he plain meaning of this language is that full title in the [p]roperty would be reinstated in the [original borrower]."  *Id.*  Returning title restores matters to the *status quo ante.  See In re Clark*, 738 F.2d 869, 872 (7th Cir. 1984).

Notably, curing does not refer to "forc[ing] a new owner on the mortgagee" by treating the default in the plan because to do so would modify the mortgagee's right in violation of § 1322(b)(2) to the extent that "[t]hat right is destroyed[.]"  *Allen*, 300 B.R. at 118.

## DISCUSSION

The issue here is whether Krohn's lien can be treated in Dominguez's plan under §§ 1322(b)(2) and (b)(5).  Dominguez proposes to pay the full amount due on the mortgage as accelerated by the due on sale clause.  ECF No. 87.

Under § 1322(b)(2), Krohn is a holder of a claim secured only by a security interest in real property that is Dominguez's principal residence.  Krohn's rights cannot be modified by Dominguez's plan unless the plan complies with § 1322(b)(5).

To pay off Krohn's claim over the life of the plan would force Krohn to adopt Dominguez as his new mortgagor.  *Allen*, 300 B.R. at 118.  Such a result would fly in the face of the very purpose of the due on sale clause, which "is to prevent the home lender's collateral from falling into the hands of someone other than the borrower whose character and credit history the lender evaluated in making its loan." *See Mullin*, 433 B.R. at 3.  The Court notes that Dominguez was notified of Krohn's lien in the wraparound deed of trust.  ECF No. 79-2 at 8.

Krohn will not be forced to adopt Dominguez as a new mortgagor. This would destroy his right to enforce the due on sale clause in violation of § 1322(b)(2).

To cure a due on sale clause's default under § 1322(b)(5), Dominguez may undo the defaulting event by returning title to CCS1. *See Mullin*, 433 B.R. at 13 (Bankr. S.D. Tex. 2010). This would restore matters to the *status quo ante*.

Because Dominguez's amended uniform modification of the confirmed plan does not provide for returning title to CCS1, it does not cure the default under § 1322(b)(5).[1]

The Court will not confirm the proposed modified plan.

## CONCLUSION

The Court will enter an order consistent with this memorandum opinion.

SIGNED 11/02/2023

Marvin Isgur
United States Bankruptcy Judge

---

[1] The Court expresses no view as to whether Dominguez could return title to the home to CCS1 in exchange for an arrangement with CCS1 that is consistent with Krohn's rights under the deed of trust.